The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. Good morning and welcome to this remote sitting of the Fourth Circuit. We're only able to do this this morning because of our fabulous IT staff and clerk's office, so I want to make sure the entire panel wants to thank our all the staff behind the scenes that are supporting us and making this possible today. So we're ready now to hear argument in our first case, Cedar Coal Company v. the Director of the Office of Workers' Compensation Programs. Mr. Kawash, are you ready? Yes, I am, Your Honor. Thank you. Can you hear me okay if I stand here? Yes. Okay, thank you. Good morning. May it please the Court, Your Honors. My name is Michael Kawash with the Charleston, West Virginia law firm Robinson & McElwee, and I represent petitioner Cedar Coal Company. And I'd like to thank the Court for permitting me to cover for my colleague, Mark Gregoracci, and present oral argument on behalf of our client. Mr. Gregoracci has prepared and filed the briefs on our behalf, and I think he's done a superb job in that regard, and I only hope that I can expound on them and answer any questions the Court may have today. This case is about limits, the limits Congress and the Department of Labor have placed on evidence in black lung claims, and the limits of deference when an ALJ credits a medical opinion that is legally flawed, internally inconsistent, and contradicted by the record. The Benefits Review Board affirmed an award of benefits that rests almost entirely on Dr. Leonard Goh's opinion, an opinion that should never have been admitted as written, and that cannot, even if admitted, constitute substantial evidence of legal pneumoconiosis. So, I'd like to make three points this morning. The administrative law judge committed reversible legal error by admitting Dr. Goh's reports in violation of the evidentiary limits. The finding of legal pneumoconiosis is unsupported by substantial evidence because Dr. Goh's opinion is unreasoned, and the contrary medical evidence was improperly discounted. And without legal pneumoconiosis, the causation and disability findings necessarily collapse. Your Honor, is this case is characterized by a serious... So, let me just lay out what I think is your argument. As I understand it, you think that Dr. Goh's reports should not have been admitted because Dr. Goh reviewed and assessed some other medical reports. Is that correct? That is correct. Specifically. Okay, well, so how were the... Aren't medical... Aren't treatment records and those other reports... Judge, you're breaking up. I couldn't... I wasn't able to hear that question. Yeah. I guess that explains why everybody was staring at me. Can you hear me now? We can hear you now. I thought it was just a really stupid question. Okay. I don't remember what it was, but I think I was trying to lay out what your argument is. And you agreed with me, but aren't medical records and the treatment records that Dr. Goh assessed, aren't those affirmative evidence that are admissible? Well, they're admissible within numerical limits. Under 20 CFR 725, 414, a claimant is permitted no more than three affirmative pulmonary function tests in a modification proceeding. And that limit is mandatory. But what about 414A1 and A2 that says medical reports may consider available admissible evidence, including any treatment records that are admissible under A4? Okay. But if they're treatment records, then they cannot be this part of the affirmative evidence in the case. So here Dr. Goh's report... They can. It says right here, treatment records are admissible, notwithstanding limits on affirmative evidence. Did your expert not review any medical records? Yes. Or treatment records? Sure, they did. But with respect to pulmonary function tests as affirmative evidence, Dr. Goh included nine separate pulmonary function tests. His report of... Because it was a part of the history of the treatment of the patient. Was Dr. Goh supposed to ignore part of the medical history of the patient? Well, the problem with this is that he provided his own analysis and interpretation of each test. What he provided was an assessment. An assessment is what he provided. Okay. Well, but he testified that he re-read, he reinterpreted, and he relied on... Was he not supposed to... In providing his medical report and expert opinion, you're blaming him for re-reading the medical history of the patient. Was he not supposed to read those? Well, it's not that he wasn't supposed to read them, but there's a limit on how many can be included in the record as affirmative evidence. A treatment record is the treating physician's interpretation. Dr. Goh was not the treating physician. Right. But as the treating physician... Excuse me. As the expert witness, he can certainly refer to the treatment record. I mean, what value would it be having an expert who was walled off from portions of the treating record in giving his or her opinion? Where's the logic to that? Well, his independent interpretations cause the number of PFTs, pulmonary function tests, to be exceeded by the rule. You can only include three PFTs... Well, that goes back to my question earlier. When you have an expert that is to review the medical reports and treatment history of the patient, you're saying they can't review the entirety of the medical history and patient records. That doesn't make any sense. Is that what your expert did? Only look at part of the treatment history? No, they looked at the entirety of it, but the employer didn't add more than three PFTs using one doctor or one expert to circumvent the that limits and caps at three in a modification proceeding the number of pulmonary function tests that are permitted. Well, isn't the purpose of the rule that you're relying on to limit what the parties present for purposes of litigation? In other words, tests that are performed for purposes of litigation that's distinct from the treatment record? Yes, Your Honor, but also it's also to put a limit as to the weight of each party's evidence too, as well. I'm sorry, say that again? Well, it's... To limit the weight of each party's... I don't understand what that... Well, to limit the numerical... I'm sorry. To limit the numerical weight of... To put a limit on the number of reports that an ALJ would be reviewing to... I'm not sure this court would want to be reviewing an evidentiary dump when one expert is used to include all of these reports. So, what do you do in A2I? A portion of that has what I think of as an integration clause, and it says in effect that, you know, any PFT results and the physician's opinions that appear must be admissible, and then it gives us two choices, right? Either under this paragraph, right, which is A2, which is the three limit that you've described, or A4. And A4, as Judge Sackler has pointed out, is obviously the treatment records. In contrast, as Judge Keenan pointed out, the evidence is being submitted as part of the litigation strategy. I take you to think that this is a typographical error because it gives two different options. And so, you think A4 is somehow limited by A2 despite this language? Can you help me understand that? Why don't we read the or out of that and instead call it and? Well, A4 concerns records of a hospitalization. Or medical treatment, right? So, PFT for medical treatment, right, would be part of the treatment record. And so, as many of those as were needed to treat, to actually treat, a sig minor are admissible under A4, right? If it's a hundred of them, I don't know why it would be, but if it was a hundred, they would all be treatment records, as Judge Sackler has pointed out. And so, that's a separate methodology. And the or in this integration clause suggests to me that A4 is in no way limited by A1. And so, I guess I'm having a hard time just understanding from the text why you think we ought to read that integration clause out. Well, because A1 is very specific in its limitations and it addresses particular types of reports, chest x-ray interpretations, pulmonary function test results, blood gas studies, autopsy reports, biopsy reports. So, it puts a limit on this. Do you think none of those things fall under A4? So, A4, okay, so your read is that the reports of related to medical treatment cannot include any of the things you just named. So, when A4 says include all the reports, notwithstanding the limitations in A2 and A3, any record of treatment may be received in the evidence. You think that there's an exception there for any of the things you just named, that is all of the medical records, all the things that you say are identified in A1 that would be records of medical treatment. And despite the reference that it says notwithstanding the limitations of A2, you think those are just not treatment records that ALJ can consider? I really, I will confess, I don't begin to understand your argument. Okay. Well, as affirmative evidence, you know, they're treatment records, they could be treatment records. In this case, you know, what Dr. Goh did, it's not a treatment record. His report is not. And his medical report could not bootstrap an interpretation of objective tests. And so... Why is that? Right? The medical report, you consider admissible evidence? Because of A4? We just said under A4, these are all admissible evidence. Well, A1, a physician's written assessment of a single objective test such as a chest x-ray or PFT is not a medical report. And did Dr. Goh's report address a single objective test or did it address a bunch of tests and a bunch of information? Well, I mean, just help me understand. Does Dr. Goh's report address only a single record? It addressed nine single objective records. I mean, that's not even true. That's not the only thing it did. I'm sorry. That's not the only thing it did. Well, to the extent that it exceeded the affirmative evidence limit, it did. You know, it's our position that he exceeded the medical evidence or the affirmative evidence limit for pulmonary function tests. And it would gut the evidentiary regulation in its entirety. You know, the ALJ's decision and the review board's decision, you know, a claimant or any party could submit unlimited pulmonary function tests by routing them through one expert. And the same logic would allow unlimited x-ray re-readings that are labeled as review. And it's the position of the petitioner that we don't believe that that's what this regulation contemplates. It certainly is what the regulation says. I don't know what it contemplates, but it doesn't say what you want it to say. I'm happy to hear more about this if you like, but if you assume for a minute that like this argument like failed miserably, does that sort of resolve the case? Because then Dr. Goch's evidence is in and we're like reviewing it for substantial evidence and we're basically done at that point? No, no, it doesn't resolve the case, Your Honor, and I'm glad you asked that. Notwithstanding what we believe to be that evidentiary violation, legal pneumoconiosis was not proven. Dr. Goch's opinion is unreasoned. He diagnosed legal pneumoconiosis based on pulmonary abnormality, lung function decline, and obstruction. But he testified that these findings are not a specific disease. They are not specific to coal dust exposure, and symptoms like wheezing are commonly associated with asthma. And the record was replete with evidence that the claimant has suffered from or has had asthma since 2009. Dr. Goch dismissed the asthma by speculation. He said essentially that... Well, and the ALJ reviewed all of the expert reports and agreed with Dr. Goch. And we're here now on the standard of substantial deference, so how are we not... I think you're asking us to completely stand in the shoes of the ALJ and do their job, and that's not our job. Well, to review the ALJ and the Benefits Review Board, we believe that the ALJ violated that substantial evidence standard as well. You know, the evidence was overwhelming that the claimant had asthma, and it was not caused or aggravated by coal mine dust exposure, repeated diagnoses by his treating physician, Dr. Samara Ghassi. He had episodic wheezing and cough, normal diffusion capacity, hospitalization for wheezing, and basically the ALJ short-sightedly focused on one 10-milliliter shortfall under one guideline, ignoring the totality of the clinical evidence. Well, the ALJ didn't ignore all the evidence. The ALJ laid out its reasoning for why it entered the opinion it did. That included a discussion of the evidence that you're talking about. Well, it's our position that the ALJ's reasoning is flawed, that the substantial evidence wasn't overwhelming, and the claimant's lung function was stable through his coal mine employment. The pulmonary disability appeared after his cardiac bypass surgery and as a result of chest wall changes as a result of that surgery. And the evidence was overwhelming that asthma explains the obstructions that he's having. And so the ALJ seized on those isolated phrases, ignoring these opinions of Dr. Zaldivar and Dr. Rosenberg, and even one of the concessions of Dr. Forhan, one of the claimant's doctors, and overlooked all of that. Even Dr. Forhan conceded that the response of the claimant in these tests met the ATS reversibility standards, the American Barassi Society. And I see that I am out of time. All right. Thank you. You have some time in rebuttal, Mr. K. Walsh. Okay. Thank you, Your Honors. All right. Mr. Petzl. Thank you, Judge Thacker. I think Your Honors seem to understand the appropriate standard of review here. And this case really gives the court the opportunity to underscore the proper standard of review in these federal black lung cases, where this court should not be called upon to reweigh the evidence in every case. And that's really, as I think Your Honors understand here, that's essentially what this appeal boils down to. First of all, as you've all, I believe, indicated, the evidentiary limitations do not limit treatment records. And if a minor has happened to have a lot of pulmonary function testing in their treatment records, that may come in because it's valid and probative as a treatment record, as you indicated, Judge Keene, and it was not developed for the purpose of litigation. These evidentiary limits, what they actually, it may be instructive to explain, under the rules, under 20 CFR 718, Section 204, there are four methods of proving totally disabling pulmonary impairment in the Black Lung Act. And one of those methods is by providing a detailed pulmonary function test report that shows graphs and charts of all the trials and the tests, all the different efforts that the minor made. This is a complex piece of evidence that judges have to scrutinize. And that is not a typical treatment record. That's very different. That's something you look at in an academic setting or a litigation setting, this complex PFT report. That is what one of the means of proof of disability under 718-204, and that's the type of evidence, the documentary evidence, that's limited by the evidentiary rule 725-414. The rules don't want judges fishing through hundreds of pages of curves and charts on pulmonary function tests. There are four ways of proving impairment under the Act. One is by PFTs through the charts. You can get two of each and a third one on a modification proceeding. You can prove disability by arterial blood gas or core pulmonary with echocardiography. And then most pertinent here, you can prove disability by under 718-204-B24 by a reasoned medical opinion. And that's what we have here. I think I understood Mr. Kawash's argument, at least in part, to be that the problem with Heath, I mean, with Dr. Goh's report is that Dr. Goh conducted his own separate interpretation of the PFTs, and that's what made it in excess of the limit. Your Honor, right. That's just simply not what the rules say. In 718-204-B24 describes what a reasoned medical opinion is. It's a finding by a physician exercising reasoned medical judgment based on medically acceptable clinical and laboratory diagnostic techniques that addresses the pulmonary impairment of the minor. And so Dr. Goh's report is just that. And it's a permissible type. It's one of the means of proving impairment. It's a means of proving causation. You are not, in fact, you know, the rules contemplate that those doctors who are reviewing experts, they do look at the treatment records. The Benefits Review Board It's basically what experts do, right? They review the record and they provide their assessment of in their report. Exactly. And at JA807, the Benefits Review Board said the same thing, and they said, they make a really important point, which gets to the second issue here. So let's say Dr. Goh's report could be limited or reduced in weight. Well, the other company doctors also relied on these same pulmonary function test records. They all did the same thing. They all looked at these records. So even if the company were right here with this argument, and it's a wash in terms of the relative probative value of all these reports because all of the reviewing doctors looked at the same PFTs. And so if you're going to, you know, this argument really doesn't move the needle, even if it had. Help me out. This is maybe curiosity instead of relevance. But why did this guy have so many PFTs? As you sort of described them, these are like pretty unusual. They're pretty detailed. I think you said they're typically sort of in the academic context or the litigation context. Why do we have so many of them for this particular claimant? Well, the what's in academic contents is all of the lab reports from each test. Those are not those are extensive reports that shows spirometric curves and so forth. It's common for a person with COPD to have pulmonary function testing every couple of years. And that's what this minor had. And all of the lab reports from that testing are not in the record here. And so that part of the company's objection is that, you know, there is a limitation on pulmonary function test reports. But all of these test reports are not in the record. Just the treatment notes about them are in the record. And those are reasonably part of the treatment. And they should be considered by the physician. So it's common to have pulmonary function testing. What's uncommon is for a judge or a doctor to look at all the curves and the function and the effort over. That's what the ALJs wind up doing in these cases. They look at a lot of the mechanics of the administration of the test to determine whether it's adequately reliable to assess disability. And that kind of detailed report is limited. We don't want these records cluttered up with a lot of spirometric reports. And they're not because those kinds of reports can only have two of them under the evidentiary limitations. But a reviewing expert should certainly be able to look at the treatment notes summarizing the pulmonary function. Did that answer your question, Judge Richardson? Yeah. Thank you. So, Mr. Petzolff, do you want to address the substantial evidence argument? Yes. Well, as I indicated, we say the Judge Timlin, Teresa Timlin, saw this case a couple of times. This minor filed the claim in 2012. I came in as counsel shortly before it went to the first hearing. And Judge Timlin did not have all these treatment records and expert testimony at that time. So, she conducted two exhaustive analyses of this case in 2019 and then again when we came back to her on modification in 22. Yeah. I did have a question about the modification. What was the mistake of fact or change in condition that required a modification? Well, this gets to the substantial evidence issue. She found that the minor did have black lung on the second hearing. And she credited our expert more heavily because she found... A mistake of fact? A mistake of fact. She initially found the minor did not have black lung. And he was always totally disabled. But on the first hearing, she found he did not have black lung. But when she looked at our additional treatment records, she saw that he had long-term COPD. He had symptoms consistent with pneumoconiosis. Then she found, based largely on Dr. Goh's report, that he did have black lung. And she placed less weight on the company doctors thereafter, reasonably, because they mistakenly found the minor did not have black lung. So, substantial evidence supports her opinion because she reasonably weighed the treatment records and the expert reports and found that doctors forehand and Goh accurately diagnosed black lung disease. And therefore, she placed greater weight on their conclusions regarding the ultimate question of causation of total disability because she found they had accurately diagnosed the pulmonary condition. And so, substantial evidence supports her ultimate conclusion there. Under the Toller and the Scott cases, this court has found that ALJ may reasonably place greater weight on the ultimate causation opinion of the expert if the ALJ finds the expert made an accurate diagnosis regarding the pulmonary condition. And here, she found, Judge Timlin, she found that the minor did have black lung. So, she placed reasonably greater weight on Goh and forehand who made that diagnosis of black lung. I mean, I think, you know, we can get into, there was great testimony at immense length about potential other contributors, but Judge Timlin looked at that. She found that there was equivocal evidence about asthma. She credited Dr. Goh, who observed that although there were some stray references to possible asthma in 2012 and 2013, Dr. Goh observed that the treating physicians had not diagnosed Mr. Mullins with asthma for 10 years, not since 2013. Instead, there were consistent diagnoses of COPD, which is a species of pulmonary impairment associated with occupational lung disease. And so, Dr. Goh's opinion, in part, was more consistent with the pulmonary treatment records and maybe substantial evidence, you know, is further supported by that consistency. And Judge Timlin credited all of that in weighing Judge, weighing Dr. Goh's opinion more heavily. All right. Thank you. Have you covered everything that you wanted to cover, Mr. Petzold? Your Honor, I would just stress that we stated the standard of review under the Hobet mining against Epling case, the Fourth Circuit case, dating back to 2015. Now, substantial evidence is well-defined. The employer here is trying to open the floodgates referencing the CB mining against Addison case, which was a special case dealing with CT evidence where this court did probe the evidence, again, on appeal for substantial evidence. But that was a very limited situation dealing with an evidentiary limitation pertinent to CT images. And the standard of review here is deferential. It's substantial evidence. As long as a reasonable mind might accept the evidence as adequate, this court should generally affirm the holdings of an ALJ. And I would hope that the court underscores the proper standard of review here so that we don't have this sort of floodgate version of CB mining that opens every black lung case to evidentiary reweighing on appeal before the Fourth Circuit. And that's all I would ask you. I thank you, Your Honors. All right. Thank you, Mr. Petzold. Mr. Goldberg, you have five minutes. You're muted, Mr. Goldberg. Okay. Thank God it not. Thank you. May it please the Court, my name is Jeff Goldberg. I'm representing the Director of Compensation Programs, and I will keep this very brief. The ALJ's decision to admit Dr. Goh's report is consistent with the evidentiary limitations that Section 725.414, the plain language of those regulations, controls the parties' agreement that the treatment records are admissible, the agreement that the pulmonary function test reviewed by Drs. Goh, Rosenberg, and Zoldovar were treatment records, Section 414.a1 permits doctors to review admissible evidence for their medical reports, Subsection 8.2i permits doctors to review any admissible pulmonary function reports, and the parties agree that these treatment pulmonary function reports are admissible. And Section 414.822i permits doctors to review any admissible pulmonary function reports. Finally, Subsection 8.4 permits the admission of treatment records, including the pulmonary function test, regardless of the evidentiary limitations. And that's what Dr. Goh did. He reviewed the treatment pulmonary function test. He referred to them in forming an opinion on the minor's condition. The ALJ acted in accordance with the regulations and admitted them. Just that simple. Cedar Cole's argument would leave the less thorough reports for no good reason and require needless hair-splitting from ALJs. I don't know how they would be expected to accomplish that or what the purpose would be. We ask that you affirm the ALJ's decision to admit these reports. All right. Thank you, Mr. Goldberg. Mr. Kawash, you have two minutes, I believe, in rebuttal. Yes. Thank you, Your Honors. Just very briefly. Yeah, Mr. Petzolk, my colleague Mr. Petzolk said, you know, the ALJ credited Dr. Goh's opinion because the reason he did is because he had nine reports of independent, own-separate interpretations and results that were affirmative evidence. And once they're affirmative evidence, they're subject to the numerical limits. And so accepting the director's view creates a loophole that would swallow this rule. The party can submit unlimited new interpretations of objective tests simply by labeling them as assessments inside a medical report, then the evidence limits are meaningless. So the limits only work if new interpretations count as new evidence. And finally, the error here was prejudicial. The ALJ indicated that the case came down to Dr. Goh versus Dr. Adevaya and that Dr. Goh was only slightly more persuasive. And the ALJ relied on Dr. Goh's opinion after allowing him to exceed the limits and to violate this, you know, to ignore all of the other evidence that was present of asthma. If Dr. Goh's report is excluded, then the outcome changes. And under Addison, that is reversible error. So this case is not about preventing doctors from giving opinions. It's about enforcing the rules that Congress and the department wrote to ensure fairness and limits in black lung litigation. And for those reasons, we pray that the court would reverse or at a minimum remand for reconsideration under a proper evidentiary framework. Thank you, Your Honor. All right. Thank you, Mr. Kawash. And I think we want to thank all the attorneys. Were we in Richmond, we would come down and greet you. But merely because we're remote does not mean we appreciate your arguments any less. So thank you for your advocacy this morning. And we will, the court will take a brief recess and reconstitute the panel. Thank you. Thank you.
judges: Stephanie D. Thacker, Julius N. Richardson, Barbara Milano Keenan